## MOLE LAKE BAND et al. (STATE OF WISCONSIN, Intervenor) v. UNITED STATES.

### No. 45162.

United States Court of Claims.

July 11, 1949.

Jay H. Hoag, of Duluth, Minn., for the plaintiffs.

Stewart G. Honeck, Deputy Attorney General of Wisconsin, Thomas E. Fairchild, Attorney General of Wisconsin, on the brief, for the intervenor.

Clifford R. Stearns, of Washington, D. C., A. Devitt Vanech, Assistant Attorney General, for the defendant.

Before JONES, Chief Judge, and MADDEN, HOWELL, WHITAKER and LITTLETON, Judges.

MADDEN, Judge.

The plaintiffs are bands of the Lake Superior Chippewa Indians of Wisconsin. By

treaties of July 29, 1837, 7 Stat. 536 and of October 4, 1842, 7 Stat. 591, the Chippewa Indians of Minnesota and Lake Superior in the Territory of Wisconsin ceded to the United States all the land which they occupied in Wisconsin, but reserved a right of occupancy in the ceded lands for the purpose of hunting, fishing, and gathering wild rice until they should be required to remove. By an Executive Order of February 6, 1850, the President directed the removal of the Indians from their lands in Wisconsin to an area in Minnesota which was to be selected for them. This order was never carried out because a suitable reservation in Minnesota was never located for them. By reason of extensions of the time for the removal the Indians remained on the Wisconsin land.

Congress enacted the Swamp Lands Act of September 28, 1850, 9 Stat. 519, which granted to the various states "unsold lands" of the United States lying within their boundaries which were swamp lands. Some of the lands which were occupied by the plaintiffs were swamp lands.

By the Act of December 19, 1854, 10 Stat. 598, Congress authorized negotiations to establish reservations for the Chippewa Indians in Wisconsin and to extinguish their rights in any Wisconsin lands other than those reservations. A treaty of September 30, 1854, 10 Stat. 1109, established the Bad River Reservation, the Lac du Flambeau Reservation and the Lac Court O'Reilles Reservation. Each of those reservations included within its boundaries a considerable area of swamp land. Pursuant to Swamp Lands Act, the State of Wisconsin made claim to swamp lands within the boundaries of the reservations and demanded patents therefor. No such patents have been issued to the State of Wisconsin. The Government says that in the meantime the land of the reservations has been largely allotted to individual Indians, the restrictions on its alienation by the Indians have been removed, and the land has been sold by the Indians.

The Indians have brought this suit pursuant to the Act of August 30, 1935, 49 Stat. 1049. Their original petition, covering the present and other claims, was filed in 1940, and in 1944 they filed a separate amended petition covering what is called the "Swamp Lands Claim." The instant controversy relates only to this claim. Another separate amended petition covering what was called the School Land Claim was adjudicated by our decision in Mole Lake Band v. United States, 113 Ct.Cl. 16, 82 F. Supp. 342. The plaintiffs' claim is that the Government, by its treaty with them in 1854, agreed to give them the lands of the reservations created by that treaty, but that the Government had theretofore, by the Swamp Lands Act of 1850, conveyed some of the reservation lands to the State of Wisconsin; that valuable timber has been cut from the swamp lands and that the plaintiffs are entitled to recover damages for the value of the swamp lands claimed by the State of Wisconsin, and the timber thereon, interest, and other proper relief.

Hearings were held and evidence taken by a Commissioner of this Court, who rendered a report to the Court, to which report the plaintiffs and the Government filed exceptions. They also filed briefs and the case was before the Court for decision. The asserted interest of the State of Wisconsin was disclosed by the findings and arguments and the Court, on October 12, 1948, caused to be sent to the Governor and the Attorney General of Wisconsin a notice of the pendency of the suit, and of the right of the State to intervene. On February 28, 1949, the State filed the petition which is now under consideration. In its petition the State suggests, as the basis of the Court's jurisdiction, a part of Chapter 358, 78th Congress, 2d Session, July 1, 1944, Public Law 395, Sec. 14(b), pp. 663–664, 58 Stat. 649, 663, 41 U.S.C.A. § 114 (b), which we quote. "(b) The Court of Claims, on motion of either of the parties, or on its own motion, may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interest, if any, in such suits or proceedings, within such period of time prior to judgment as the Court of Claims shall prescribe. * * * Upon failure so to appear, any and all claims or interests in claims of any such person against the United States, in respect of the subject matter

of such suit or proceeding, shall forever be barred and the court shall have jurisdiction to enter judgment pro confesso upon any claim or contingent claim asserted on behalf of the United States against any person who, having been duly served with summons, fails to respond thereto, to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States. * * * ”

Wisconsin, by its petition to intervene, as modified by statements made by counsel in argument and in a later written communication to the Court, takes the position that it is the owner of the swamp lands in question by virtue of the Swamp Lands Act of September 28, 1850, and that a justiciable controversy exists between the plaintiff Indians and the Government, and between Wisconsin and the Government with respect to those lands, but that this Court does not have jurisdiction to quiet title to those lands in the State. It further asserts that there were agreements made between the Government and Wisconsin whereby the Government was to cause the timber to be cut from the lands and the proceeds were to be placed in escrow pending determination by a competent court or tribunal of the legal question of ownership of the lands, and it asserts its right to such proceeds, with interest, as a claim founded upon a contract with the United States. It asks for such other and further relief as may be justified.

The Government objects to Wisconsin's intervention on the ground that any claim which Wisconsin may have to the lands or the proceeds of the timber cut from the lands has been barred by the Statute of Limitations. We think that the objection is not valid, as it does not appear from the petition of intervention that Wisconsin's claim, as a cause of action, has existed for more than six years. If it acquired title to the swamp lands by the Act of September 28, 1850, whether it has since that time lost that title by the running of the statute of limitations will depend upon the facts which have occurred since, and the applicable law. The facts which it pleads do not, of course, show that it has lost the title, and what the actual facts are will have to be shown by evidence. Also, as to the proceeds of the timber, the petition to intervene alleges the agreement stated above, and does not, of course, allege that the agreement was repudiated more than six years before the filing of the petition to intervene. Whether there was such an agreement as Wisconsin asserts and what later events may have occurred to start the Statute of Limitations to run against Wisconsin must be shown by evidence.

The Court will be assisted in its disposition of the instant case by the evidence and arguments which the State of Wisconsin may present. We deny the Government's motion to dismiss Wisconsin's petition and accord to Wisconsin the status of a party in the case.

It is so ordered.